### REED v. REED.

1. The written admission of service of summons by a duly authorized attorney would probably be binding upon the defendant, but acceptance of service by an attorney having no authority so to do, does not constitute a legal service.
2. Where a defendant expressly refused to authorize his attorney to accept service of summons for him, the court could not imply such authority, except perhaps upon a principle of estoppel in proper cases.
3. Where the plaintiff's attorney is referred by defendant to his solicitor for negotiations before suit, and afterwards such attorney is informed that "the case must take the usual course," the solicitor in the negotiations has no implied authority from defendant to accept service of summons.
4. The acceptance of service in this case was made under a misapprehension, and efforts were promptly made by defendant's attorneys to have the mistake corrected without disadvantage to plaintiff; there is, therefore, nothing here to affect the faith and confidence of members of the profession towards each other, and no ground of estoppel.

---

Before ALDRICH, J., Beaufort, October, 1882.

This was an action by Florence A. D. Reed against Joseph S. Reed. The opinion states the case.

*Messrs. Wm. Elliott* and *Simonton & Barker,* for appellant, cited Code, §§ 155, 159, 408–418; 1 *O'Neall's Bench and Bar, Introductory,* p. XXXII.

*Mr. A. G. Magrath,* contra, cited *Wait's Ann. Code,* 180; 1 *N. & McC.* 458; *Rules of Circuit Court,* No. XVII; 42 *N. Y.* 27; 3 *Edw. Ch.* 173; 6 *Johns.* 36, 296; 37 *N. Y.* 502.

July 31st, 1883. The opinion of the court was delivered by

Mr. Justice McIver. The only question raised by this appeal is as to the validity of the service of the summons and complaint. The facts as gathered from the "Case" are substantially as follows: On August 8th, 1883, Mr. Magrath, as attorney for the plaintiff, addressed a note to the defendant, stating that he had been instructed by her to institute proceedings which would materially affect the relations thereafter to exist between them as husband and wife, but he expressed a hope that a conclusion might be reached by consent of all parties, which would avoid the necessity of a public trial, and to this end he expressed a willingness to coöperate with any professional gentleman who might be designated by the defendant as his representative. To this letter defendant replied, saying: "I beg leave to refer you to Wm. Elliott, Esq., of Beaufort, as my solicitor in the matter to which you have referred." Accordingly, these gentlemen seemed to have had a conference upon the subject referred to in the correspondence, and as a result thereof certain propositions were submitted by Mr. Elliott to the defendant, who declined to accede to them. Mr. Elliott informed Mr. Magrath of this result, stating that the instructions of defendant were, "that the case must take the usual course."

After the negotiations had failed, Mr. Elliott asked the defendant whether he should accept service of the papers for him, and was instructed not to do so. Mr. Magrath, upon receiving notice that the case must take the usual course, prepared the summons and complaint, and sent them to Mr. White, his associate counsel, at Beaufort, to be served. On September 22d, 1882, Mr. White called at the office of Messrs. Elliott & Fowles, and asked for Mr. Elliott, and being informed that he was absent, asked for an acceptance of service of the summons and complaint in this case, as it was regarded as important that the service should be made on that day, so that the case could be docketed for trial at the next succeeding term. Mr. Fowles, being ignorant of defendant's instructions not to accept service for him, and with the understanding, as he supposed, that what he did was subject to the approval of .Mr. Elliott upon his

return, signed the acceptance of service in the name of " Elliott & Fowles, attorneys for J. S. Reed."

Immediately upon the return of Mr. Elliott, he was informed by Mr. Fowles of what he had done, when the latter was notified of defendant's positive instructions not to accept service for him, and was requested to let Mr. White know at once of these instructions, which was accordingly done. Mr. White then went to the office of Messrs. Elliott & Fowles, where he was informed by Mr. Elliott of Reed's instructions; that Mr. Fowles had signed the acceptance of service in ignorance of such instructions and that it would be necessary to serve Reed personally. Mr. White objected that unless the service was made by the twenty-second of that month, it would be too late to docket the case for trial at the approaching term of the court. Upon being assured by Mr. Elliott, that if he would have Reed served at once, no question would be raised as to his right to docket the case for trial at the approaching term, Mr. White took all the papers and gave the copies to the sheriff to be served on the defendant. The deputy sheriff went to the defendant's usual place of residence, and finding that he had gone to a summer resort a few miles distant in the same county, returned the papers to Mr. White without serving them, and he returned them to Mr. Elliott, who, as soon as he received them, sent them back to Mr. White with a letter informing him that the acceptance of service could not be recognized.

Soon after this Mr. Elliott received notice from Mr. Magrath that " in the interest of his client he would have to consider the papers as served." Whereupon the motion was made for an order " setting aside the alleged service of the summons and complaint herein, and for such other relief as may be just." The Circuit judge refused the motion, and thereupon this appeal was was taken, by which the real question made is, whether the acceptance of service by Messrs. Elliott & Fowles, as attorneys for defendant, was a valid service upon the defendant.

In the code of 1882, section 155, the manner in which a summons must be served is prescribed, while section 159 prescribes the different modes by which such service shall be proved, one of which is by the written admission of the defendant, and

section 160 declares that "a voluntary appearance of a defendant is equivalent to personal service of the summons upon him." It is quite clear that the summons in this case was not served in any one of the modes prescribed by section 155, and, therefore, the practical inquiry is, whether there has been any written admission of service by the defendant, or whether he has made voluntary appearance in the action. It is not pretended that there was any written admission of service by the defendant in person, nor that he has made voluntary appearance to the action.

The question, therefore, is narrowed down to the inquiry whether the admission of service by the attorneys of defendant amounts to the same thing as a written admission of service by himself *in propria persona.* For while the code does not, in terms, provide that the written admission of service by the defendant may be made by one duly authorized so to do by the defendant, yet we suppose that, upon well settled principles, an admission so made would be binding upon the defendant. Hence it will be necessary for us to determine in this case whether the act of the attorneys in signing the acceptance of service was duly authorized by the defendant.

There is no evidence whatever that any express authority was ever given by the defendant to attorneys to accept service for him, but, on the contrary, it distinctly appears that he had explicitly refused to confer such authority upon his attorneys, and this would seem to be conclusive of the question. The court could not obtain jurisdiction of the person of the defendant until he had been made a party in some one of the modes prescribed for that purpose. He had a perfect legal right to require that he should be legally served with process, and he alone could waive this legal right, and when he expressly refused so to do, certainly no one could lawfully assume to waive this right for him. It is manifest, therefore, that there was no legal service of the summons in this case and no waiver of such service by any one authorized so to do.

The respondent, however, contends that although there was no express authority given by the defendant to his attorneys to acknowledge service, yet such authority could and must be implied from the letter of the defendant to the senior counsel for plaint-

iff, in which he refers that counsel "to Wm. Elliott, Esq., as my solicitor in the matter to which you have referred." In the first place, it would be going very far to imply an authority in the face of the undisputed fact that the defendant had expressly refused to confer such authority, and a court would scarcely ever resort to such an implication, except, perhaps, upon the principle of estoppel to prevent manifest wrong or injustice, which, as we shall presently see, does not apply in this case.

But in addition to this it is, to say the least of it, very doubtful whether the terms of that letter would authorize such an implication. That letter was in reply to one which manifestly looked to the very commendable purpose of adjusting the matters in dispute by private negotiation rather than by a suit at law, and the letter of defendant may well be regarded as referring to Mr. Elliott as the counsel who was authorized to represent him in such negotiation, and this Mr. Elliott did. But when the negotiations failed and Mr. Elliott communicated the result to Mr. Magrath, with the statement that " his instructions are that the case must take the usual course," the parties were placed at arms'-length, and the plaintiff, if desirous of bringing an action, could only do so in the usual way, by service of a summons in some one of the modes prescribed by law, without regard to what had previously passed between the parties while engaged in the abortive attempt to arrange the matter by negotiation. We do not think, therefore, that the letter of the defendant to Mr. Magrath should be regarded as containing even an implied authority to Mr. Elliott to accept service for the defendant.

It has been earnestly urged upon us that this view will tend to impair, if not destroy, " all faith and confidence in the acts and conduct of the members of the profession " in their dealings with each other; but we do not apprehend that any such result is likely to ensue; if we did, we would, indeed, hesitate long before announcing a conclusion which would lead to such unfortunate consequences, for we yield to none in our high appreciation of the importance of preserving that high tone which has always characterized the profession; but in this case we are unable to see anything calculated to excite such an apprehension. The defendant is here insisting upon a plain legal right which

we are bound to accord to him; and there is absolutely nothing in the conduct of his attorneys which can properly be regarded as in anywise a departure from the strict line of courtesy and fair dealing which should always characterize the members of a high-minded liberal profession.

The utmost that can be said is, that the junior member of the firm, under a misapprehension of the facts, undertook to accept service for the defendant, with the understanding, as he supposed, that he did so subject to the approval of his senior when he returned; but as soon as he learned that he had acted not only without authority, but contrary to the positive instructions of his client, which had not previously been communicated to him, doubtless because his senior, who alone had been consulted in the matter, was absent on professional business, immediately informed the counsel for the plaintiff of his unintentional error, so that he might, by having the defendant properly served, repair the defect; and counsel for plaintiff was given the assurance that if the defendant were then properly served, as it appears might have been done, no obstacle should be thrown in the way of docketing the case for trial at the approaching term.

What more could they have been expected to do? They had no power to make the acceptance of service valid or to waive the necessity for service; but they proposed to the counsel for the plaintiff that if the defendant should then be served, so as to make him a party in court, subject to its jurisdiction, they would then waive all such notices as might be necessary to secure the docketing of the case for trial, which they would have had the legal right to do under the provisions of title 12, chapter 11, part II., of the code of procedure. If this had been done, as it might have been but for the failure of the counsel for plaintiff to act upon this offer, then the object of plaintiff's counsel would have been accomplished, and the case would have been ready for a hearing at the then approaching term of the court. But the counsel for the plaintiff having failed to avail themselves of this offer, and having elected to stand upon the acceptance of service by the attorneys for the defendant, as a legal service, cannot be said to have been misled to their preju-

dice, and, therefore, there is no room for the application of the doctrine of estoppel.

The judgment of this court is that the order appealed from be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary.